J. Walter Sinclair, ISB #2243
*Email: jwaltersinclair@hollandhart.com*
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Ernest Summers (*pro hac vice pending*)
*Email: Ernie.Summers@faegrebd.com*
Kate E. Middleton (*pro hac vice pending*)
*Email: Kate.Middleton@FaegreBD.com*
FAEGRE BAKER DANIELS LLP
311 S Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: (312) 212-6500
Facsimile: (312) 212-6501

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

ST. LUKE'S HEALTH SYSTEM, LTD. AND
ST. LUKE'S REGIONAL MEDICAL
CENTER, LTD.,

          Plaintiffs,

v.

ALLIED WORLD NATIONAL
ASSURANCE COMPANY AND DARWIN
NATIONAL ASSURANCE COMPANY,

          Defendants

Case No.:  1:14-cv-475

**COMPLAINT**

Now come the Plaintiffs, St. Luke's Health System, Ltd. ("SLHS") and St. Luke's Regional Medical Center. Ltd. ("SLRMC") (Collectively "St. Luke's"), by and through their attorneys of record and for their Complaint against Defendants Allied World National Assurance Company ("AWNAC") and Darwin National Assurance Company ("Darwin") (Collectively "Allied"), state as follows:

## <u>INTRODUCTION</u>

1.    This is an insurance coverage dispute for breach of contract and for declaratory judgment, brought by St. Luke's against Allied for insurance coverage under D&O insurance Policy # 0305-6293 for the periods June 1, 2011-June 1, 2012 and June 1, 2012-June 1, 2013 (the "Policies").

2.      The Claim arises in the context of the ongoing defense of underlying antitrust litigation brought against St. Luke's as a result of a transaction between St. Luke's and Saltzer Medical Group ("Saltzer"), in which St. Luke's acquired certain assets of Saltzer, employed its non-physician staff, and contracted for the services of its physicians (the "Underlying Litigation").

3.      Insuring Agreement D of the Policies specifically provides D&O insurance coverage for antitrust claims against St. Luke's.

4.      Timely notice of the claim was given to Allied, and Allied agreed to pay Defense Expenses for the Claim.

5.      Allied paid **Defense Costs** through November of 2013 for the Underlying Litigation, but Allied failed and refused to pay additional any **Defense Costs** that St. Luke's incurred defending the Underlying Litigation, and St. Luke's **Defense Costs** are continuing.

6.      On January 24, 2014, the court in the Underlying Litigation issued Findings of Fact and Conclusions of Law and ordered divestiture of Saltzer.  A true and correct copy of the Findings of Fact and Conclusions of Law is attached as Exhibit 1.

7.      The court entered judgment on the order on February 8, 2014, and St. Luke's filed an appeal that is still pending.

8.      No damages were awarded in the Underlying Litigation and there was no finding that any profit, financial advantage, or any improper remuneration was actually gained by St. Luke's.

9.      The court also found no antitrust intent or past financial gain, and specifically found that St. Luke's is to be applauded for its efforts to improve the delivery of health care, stating:

> The Acquisition was intended by St. Luke's and Saltzer primarily to improve patient outcomes. The Court believes that it would have that effect if left intact, and St. Luke's is to be applauded for its efforts to improve the delivery of health care in the Treasure Valley. See District Court's Findings of fact and Conclusions of Law, Case No. 1:12-CV-00560-BLW filed January 24, 2014 [Dkt. 464], Exh 1 at page 3.

10.     The court ordered divestiture solely to prevent the potential for a future increase in health care costs, stating:

> The antitrust laws essentially require the Court to predict whether the deal under scrutiny will have anticompetitive effects. The Court predicts that it will.

11.     On March 26, 2014, Allied, through AWNAC, declined coverage for the Claim, and in breach of the express Policy terms, (a) demanded repayment of the **Defense Costs** previously paid, (b) refused to reimburse the balance of the **Defense Costs** paid by the Insureds prior to the court's ruling, (c) breached their express obligations to continue to pay **Defense Costs** for the Underlying Litigation through the appeal, and (d) refused to pay any fee award that the court might enter in favor of the claimants.

12.     St. Luke's filed this suit for breach of the insurance contract, to obtain reimbursement of over $75,000.00 in **Defense Costs** that Allied has not paid, and for a declaratory judgment enforcing its rights to reimbursement of future amounts under the Policies.

## THE PARTIES

10     Plaintiff SLHS is a not-for-profit health system organized under and by virtue of the laws of Idaho. SLHS, is headquartered in Boise, Idaho and is the parent of plaintiff SLRMC and other entities in the St. Luke's system.

11.     Plaintiff SLRMC is also an Idaho not-for-profit corporation headquartered in Boise, Idaho. SLRMC is the St. Luke's entity that purchased the assets of Saltzer and employs the non-physician former Saltzer employees.

COMPLAINT – Page 3

12.     Defendant AWNAC is a New York Corporation headquartered in New York City, New York.  AWNAC is the parent of Darwin.

13.     Defendant Darwin is a Connecticut corporation headquartered in Farmington, Connecticut.  Darwin issued insurance Policy # 0305-6293 for the periods June 1, 2011-June 1, 2012 and June 1, 2012-June 1, 2013.

## JURISDICTION AND VENUE

14.     Jurisdiction exists pursuant to 28 U.S.C. §1332, inasmuch as there is complete diversity between the parties and the matter in controversy exceeds $75,000.00.   Venue is appropriate in this district pursuant to 28 U.S.C. §1391.

15.     Jurisdiction also exists pursuant to 28 U.S.C. §§2201-2202 in that there is an actual controversy regarding Insurers' continuing obligations to pay Defense Expenses and there is an actual controversy regarding Allied's claim for recoupment of Defense Costs it already paid.

## BACKGROUND

16.     On November 12, 2012, Saint Alphonsus Medical Center - Nampa, Inc., Treasure Valley Hospital Limited Partnership, Saint Alphonsus Health System, Inc., and Saint Alphonsus Regional Medical Center, Inc. filed a civil antitrust lawsuit to enjoin St. Luke's transaction with Saltzer under Section 7 of the Clayton Act.   The Saint Alphonsus complaint allegations are attached hereto as Exhibit 2.

17.     The plaintiffs in the Saint Alphonsus lawsuit sought a preliminary injunction to enjoin the proposed acquisition, but the preliminary injunction was denied by the court.

18.     St. Luke's transaction with Saltzer was completed on December 31, 2012.

19.     An additional antitrust lawsuit was filed in March of 2013 by the Federal Trade Commission and the Idaho Attorney General asserting violations of Section 7 of the Clayton Act

and Section 48-106 of the Idaho Competition Act. The complaint allegations in the government

suit are attached hereto as Exhibit 3.

     20.    The Saint Alphonsus lawsuit and the suit by the FTC and the Idaho Attorney

General were consolidated and together constitute "The Underlying Litigation".

     21.    The Underlying Litigation continued in the trial court until February 8, 2014,

when judgment was entered and an appeal was taken by St. Luke's.

     22.    The Underlying Litigation is ongoing and is continuing in the Court of Appeals.

## THE POLICIES

     23.    Darwin issued Policy # 0305-6293 for the period June 1, 2011 - June 1, 2012 [A

true and correct copy is attached hereto as Exhibit 4] and renewed it for the period June 1, 2012 –

June 1, 2013 [A true and correct copy is attached hereto as Exhibit 5] (hereafter collectively the

"Policies").  The same policy forms were used and the terms that are material to this dispute are

identical in the two Policy years in all respects.

     24.    Each Policy provides a $25,000,000 limit of liability insurance for the Directors

and Officers Liability Coverage Section, subject to a $750,000 Retention.

     25.    Insuring Agreement D of the Directors and Officers Liability Coverage Section of

the Policies expressly provides antitrust insurance coverage:

> D.    Antitrust Activities Coverage
>
> The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for **Antitrust Activities**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.  (Exh. 4 and Exh. 5, p. 1 of form PP0037 00 (12/10) in both Policies)

     26.    Section 4.F. Identifies $25,000,000 as the Limit of Liability for Antitrust Claims

Coverage.

27.     **"Antitrust Activities"** is defined in Section II, Definition B of the Policies as

follows:

> B.  **"Antitrust Activities"** means price fixing; restraint of trade;
> monopolization; unfair trade practices; or a violation of the Federal
> Trade Commission Act, as amended, the Sherman Act the Clayton
> Act, as amended, or any other federal statute involving antitrust,
> monopoly, price fixing, price discrimination, predatory pricing or
> restraint of trade activities, or of any rules or regulations
> promulgated under or in connection with any of the foregoing
> statutes, or of any similar provision of any federal, state or local
> statute, rule or regulation or common law. (Exh. 4 and Exh. 5, p. 4
> of form PP0037 00 (12/10) in both Policies))

28.     The Underlying Litigation sets forth allegations within the definition of **Antitrust**

**Activities** and within Insuring Agreement D.

29.     **"Claim"** is expressly defined in Definition C of the Policies to include any

appeals:

> C.      **"Claim"** means any:
>
> > (2)     judicial, administrative or regulatory proceeding,
> > whether civil or criminal, for monetary, non-monetary or
> > injunctive relief commenced against an Insured, ***including
> > any appeal therefrom*** [*Emphasis added*], which is
> > commenced by:
> >
> > > (a)     service of a complaint or similar pleading;
> > > (b)     return of an indictment, information or
> > > similar document (in the case of a criminal
> > > proceeding); or
> > > (c)     receipt or filing of a notice of charges;
> >
> > (Exh 4. and Exh. 5, pp. 4-5 of form PP0037 00 (12/10) in
> > both Policies)

30.     The Underlying Litigation, including the appeal, constitutes a **Claim.**

31.     **"Loss"** is expressly defined in Definition P of the Policies to include both the

Insured's "Defense Costs" and any legal costs or attorneys fees awarded by a Court:

> P.      **"Loss"** means:

COMPLAINT – Page 6

(3)     legal costs or attorneys fees awarded by a court in favor of the claimant;

(9)     **Defense Costs**.

(Exh. 4 and Exh. 5, pp. 8 – 9 of form PP0037 00 (12/10) in both Policies)

32.     The **Defense Costs** incurred in the Underlying Litigation and any attorneys fees awarded by the court in favor of the Underlying Plaintiffs are covered **Loss** under the Policies.

33.     **"Defense Costs"** is expressly defined in Definition F of the Policies to include appeals:

F.     **"Defense Costs"** means:

(1)     reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or ***appeal*** of a Claim [*Emphasis added*].

(Exh. 4 and Exh. 5, pp. 6-7 of form PP0037 00 (12/10) in both Policies)

34.     The defense costs incurred in the Underlying Litigation, including the appeal, are **Defense Costs** covered under the Policies.

## THE CLAIM CORRESPONDENCE

35.     On January 9, 2013, Allied acknowledged St. Luke's notice of Circumstance and tender of the Underlying Litigation.  Allied's January 9, 2013, correspondence is attached as Exhibit 6.

36.     At the beginning of the Coverage Analysis section on page 4 of the January 9, 2013 letter, Allied admitted:

The Policies provide D&O Liability Coverage, EPL Coverage, Fiduciary Liability Coverage, and Employed Lawyers Coverage. The FTC's and Idaho Attorney General's investigations and the [St. Alphonsus] Lawsuit potentially trigger coverage under the D&O Liability Coverage Section.  [Exh. 6, p. 4]

37.     On April 22, 2013, after the FTC and Attorney General filed their suit, Allied again confirmed that the St. Alphonsus suit and the FTC/Attorney General suit were a single "Claim" implicating the D&O Insuring Agreement D and that St. Luke's was an Insured.  The April 22, 2013 letter is attached as Exhibit 7.  See, pp. 5-6.

38.     Allied did not take a position on April 22, 2013 whether Saltzer was an Insured. Rather, Allied raised questions that it would need answered before Allied could make a determination as to Saltzer. Exh. 7, pp. 7-8.

39.     In the letters of January 9, 2013, and April 22, 2013, Allied correctly concluded that the Underlying Litigation was potentially covered under Insuring Agreement D based on the Insuring Agreement itself and the definitions of **Claim**, **Loss**, **Defense Costs,** and **Antitrust Activities.**

40.     On September 23, 2013, Allied sent yet another letter, Exhibit 8, which expressly incorporated the January 9, 2013, and April 22, 2013, letters by reference.  The September 23, 2013, letter is attached hereto as Exhibit 8.

41.     In the September 23, 2013, letter there was no discussion of Insuring Agreement D or the definitions of **Claim**, **Loss**, **Defense Costs**, and **Antitrust Activities**.

42.     However, for the first time, Allied stated that it might invoke Exclusion A or Exclusion B if a judgment were entered that established the applicability of either Exclusion.

43.     On March 26, 2014, after the judgment was entered in the trial court, Allied ignored its own prior interpretations of Insuring Agreement D and Definitions C, F, and P of the Policies and refused to pay **Loss** clearly within the Policy terms, stating:

> …Allied World will not reimburse St. Luke's for the balance of the Defense Costs that it incurred in connection with the Lawsuit, and will not reimburse St. Luke's for any costs that it has or will incur

COMPLAINT – Page 8

in connection with its appeal of the judgment entered in the
Lawsuit. Also, should the Court enter any awards for attorneys'
fees, the '11 Policy will not provide coverage for the same.
[Attached as Exh. 9, p. 4]

44.     Allied's refusal to pay the **Loss** within the Policy terms was a material breach by

Allied.

45.     The reason given by Allied for declining coverage was Exclusion A, which

provides:

This Coverage Section shall not cover any Loss in connection with
any Claim:

A.      arising out of, based upon or attributable to the gaining of
any profit or financial advantage or improper or illegal
remuneration by an Insured, if a final judgment or adjudication
establishes that such Insured was not legally entitled to such profit
or advantage or that such remuneration was improper or illegal[.]
[Exh. 9, p. 4]

46.      Allied invoked Exclusion A without reference to the Policy definitions, stating:

Pursuant to FRCP 58(a), the Court entered judgment in the
Lawsuit on February 28, 2014. This constitutes a final judgment or
adjudication under the terms of Exclusion A.

47.     The Policy must be read as a whole, and Exclusion A cannot be read in conflict

with the Policy Definitions of **"Loss"**, **"Claim"**, and **"Defense Costs"**, all of which include

appeals.

48.     Allied's application of Exclusion A was a material breach because it is in conflict

with the Policy Definitions of **"Loss"**, **"Claim"**, and **"Defense Costs"**, all of which include

appeals.

49.     Allied's application of Exclusion A was also a material breach because the

Findings of Fact and Conclusions of Law by the trial court did not include any findings of

improper gain or profit and did not impose any damages on St. Luke's.

50.     Allied's position that Exclusion A allows Allied to refuse to pay any fee awards for the Underlying Plaintiffs cannot be reconciled with the express definition of **Loss** which includes such fee awards.

51.     Coverage promoting provisions must be interpreted broadly in favor of the insureds whereas coverage restricting provisions such as Exclusion A must be interpreted narrowly.

52.     On May 20, 2014, St. Luke's disputed Allied's declination of coverage under Exclusion A and asked Allied to reconsider.

53.     Allied never responded in writing, but left a voice mail stating that it would not reconsider its declination.

## COUNT I

## <u>BREACH OF INSURANCE CONTRACT</u>

54.     Plaintiffs restate and reallege paragraphs 1 – 53 above, as if fully restated herein.

55.     The Policies attached as Exhibits 4 and 5 constitute binding insurance contracts.

56.     Allied materially breached the insurance contracts obligations to pay any **Loss** in the form of **Defense Costs** through appeal.

57.     Allied additionally materially breached the insurance contracts by refusing to pay any **Loss** in the form of legal costs or attorney's fees awarded by a court in favor of the claimant.

58.     Allied's breach caused damages to St. Luke's, which damages are continuing.

59.     The amount of the damages to date caused by Allied's breach exceed $75,000.00 and they are continuing on appeal.

## COUNT II

### DECLARATORY JUDGMENT (Payment of Continuing Loss)

60.     Plaintiffs restate and reallege the allegations of paragraphs 1 – 59 above, as if fully restated herein.

61.     There is an actual substantial controversy between Allied and St. Luke's regarding Allied's obligations for this Claim under the Policies.

62.     The interests of Allied and St. Luke's are adverse.

63.     The **Loss** is of a continuing nature and St. Luke's **Defense Costs** continue to increase on appeal.

64.     Fee petitions have been filed by plaintiffs in the Underlying Litigation that are expressly included in the definition of **Loss** in the Policies.

65.     The interests are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

66.     The amount in controversy exceeds $75,000.00.

## COUNT III

### DECLARATORY JUDGMENT (No Recoupment)

67.     Plaintiffs restate and reallege the allegations of paragraphs 1 – 65 above, as if fully restated herein.

68.     There is an actual substantial controversy between Allied and St. Luke's regarding Allied's claim for recoupment under the Policies.

69.     The interests of Allied and St. Luke's are adverse.

70.     Section V.E. of the Policy requires Allied to pay all Defense Costs in excess of the Retention prior to the final disposition of the **Claim**.

71.     **"Claim"** expressly includes the appeal, which is ongoing.

COMPLAINT – Page 11

72.     Exclusion A does not apply because it is premature before the conclusion of the appeal and because there was no finding by the trial court of any improper or illegal profit or remuneration received by St. Luke's.

73.     The interests are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

74.     The amount in controversy exceeds $75,000.00.

<u>**RELIEF REQUESTED**</u>

75.     WHEREFORE, St. Luke's respectfully prays that this Court enter an order granting St. Luke's the following relief:

A.     Award damages in favor of St. Luke's requiring Allied to reimburse the past Defense Costs already incurred by St. Luke's;

B.     Enter a judgment for declaratory relief requiring Allied to continue to pay any additional Loss as defined in the Policies through the conclusion of all proceedings in the Underlying Litigation, including St. Luke's Defense Costs and any fees awarded to the plaintiffs in the Underlying Litigation;

C.     Enter a judgment for declaratory relief denying Allied's claims for recoupment of the Defense Costs paid by Allied; and

D.     Award such supplemental and other relief as this Court finds just and proper.


Respectfully submitted,


                                                     s/ J. Walter Sinclair
                                                     _____
                                                     J. Walter Sinclair
Dated: November 4, 2014                              HOLLAND & HART LLP
                                                     800 West Main Street, Ste. 1750
                                                     Boise, ID 83702
                                                     (208) 342-5000


COMPLAINT – Page 12
US.55150018.01

Ernest Summers (*pro hac vice pending*)
Kate E. Middleton (*pro hac vice pending*)
FAEGRE BAKER DANIELS LLP
311 S Wacker Drive, Suite 4300
Chicago, IL 60606
(312) 212-6500

*Attorneys for St. Luke's Health System, Ltd. and St. Luke's Regional Medical Center, Ltd.*