IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD. AND ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIED WORLD NATIONAL ASSURANCE COMPANY AND DARWIN NATIONAL ASSURANCE COMPANY, <br><br> Defendants. | Case No. 1:14-CV-475-BLW <br><br> **MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it cross-motions for a partial judgment on the pleadings under Rule 12(c). The motions are fully briefed and at issue. For the reasons explained below, the Court will grant St. Luke's motion and deny Allied's motion.

## BACKGROUND

Allied insured St. Luke's against a "loss" arising from any claim against St. Luke's for "antitrust activities." The policy defines "loss" to include attorney fees and "antitrust activities" to include "a violation of . . . the Clayton Act . . . or any similar provision of . . . state . . . law." The policy also included various exclusionary clauses.

Following a trial, this Court held that St. Luke's violated the Clayton Act and a similar Idaho law. *St. Al's v. St Luke's* 2014 WL 407446 (D.Id. Jan. 24 2014). That decision was largely affirmed by the Ninth Circuit. *St. Al's v. St. Luke's,* 778 F.3d 775 (9th Cir. 2015).

Both opinions focused on the bargaining leverage that St. Luke's obtained by purchasing the Saltzer Group, and predicted that this leverage would result in higher prices in the future. *St. Al's,* 2014 WL 407446 at *1 (holding that "[t]he antitrust laws essentially require the Court to predict whether the [Saltzer merger] will have anticompetitive effects [and] the Court predicts that it will"). Importantly, neither opinion included a finding that St. Luke's had actually used its bargaining leverage to obtain monetary or other financial gain.

St. Luke's tendered a claim for its costs defending this lawsuit to Allied on January 9, 2013, and Allied agreed to pay those costs subject to a reservation of rights. In November of 2013, Allied partially reimbursed St. Luke's for almost $8 million in defense costs. About four months later, Allied sent St. Luke's a letter denying coverage, demanding repayment of the $8 million, and refusing to pay any further defense costs. St. Luke's responded by filing this lawsuit alleging that Allied breached the policy by denying coverage and seeking a declaratory judgment that Allied is obligated to pay St. Luke's defense costs.

Both sides have now filed motions for judgment on the pleadings, and both agree that the central issue is the interpretation of exclusionary language in the insurance policy. The issue is therefore one of law that can be resolved on the briefs.

## ANALYSIS

The insurance policy between Allied and St. Luke's contains a provision entitled "Exclusion A" that bars coverage for any loss in connection with any claim

> arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration by [St. Luke's], if a final judgment or adjudication establishes that [St. Luke's] was not legally entitled to such profit or advantage or that such remuneration was improper or illegal[.]

**Memorandum Decision – page 2**

In this case, the Court held that St. Luke's was not legally entitled to the bargaining leverage it obtained by purchasing Saltzer, and the Ninth Circuit affirmed that decision. The Court made no finding that St. Luke's used that bargaining leverage to actually obtain any monetary or financial gain. The Court did not award any damages or order St Luke's to disgorge any profits or financial gain. Thus, there was no "final judgment or adjudication" that St. Luke's "was not legally entitled to such profit or advantage or that such remuneration was improper or illegal."

The lack of that finding appears to render Exclusion A inapplicable. If the language of an insurance policy is clear, then the language will be given its plain and ordinary meaning. *Farm Bureau Mutual Insurance Co. of Idaho v. Schrock*, 252 P.3d 98, 102 (Id.Sup.Ct. 2011). Each of the three terms in Exclusion A – profit, financial advantage, improper/illegal remuneration – pertain to various types of monetary or financial gain. Yet there was no finding that St. Luke's obtained any monetary or financial gain from its bargaining leverage.

Allied attempts to avoid the lack of this crucial finding by arguing that the term "financial advantage" in Exclusion A should be interpreted to include bargaining leverage. Of course, it would have been easy for Allied as the drafter to define financial advantage to include bargaining leverage. But it did not do so. Allied urges this Court to "interpret" the term financial advantage to include bargaining leverage, but it is really asking the Court to add the definition that it failed to write into the policy. This Court cannot "add words to . . . avoid liability." *Armstrong v. Farmers Ins. Co. of Idaho,* 205 P.3d 1203, 1205-06 (Id.Sup.Ct. 2009).

An even closer look at the two terms does not assist Allied. Bargaining leverage is to financial advantage what education is to employment – a means to an end. Just as education is a means of obtaining employment, so is bargaining leverage a means of obtaining a financial

**Memorandum Decision – page 3**


advantage. Allied conflates the means with the ends. Just as the word education cannot be used interchangeably with the word employment, so too financial advantage is not interchangeable with bargaining leverage.

Allied uses the terms in Exclusion A to restrict coverage. "[A]n exclusion must be strictly construed in favor of the insured." *Moss v. Mid-America Fire & Marine Ins. Co.,* 647 P.2d 754, 756 (Id.Sup.Ct. 1982). Moreover, "the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Id.* Strictly construing Exclusion A in favor of St. Luke's, there is no "clear and precise" language in that paragraph alerting St. Luke's that a finding of bargaining leverage without a finding of any accompanying monetary or financial gain would result in an exclusion of coverage.

## CONCLUSION

For all these reasons, the Court will grant St. Luke's motion for partial judgment on the pleadings and deny Allied's motion. In its motion, St. Luke's seeks the following relief: (1) Allied has a duty to reimburse all defense costs that St. Luke's incurred prior to and during the appeal of the underlying litigation; (2) Allied has breached its duties under the Policy in failing to reimburse St. Luke's defense costs in the underlying litigation; (3) Exclusion A does not bar coverage for this claim; and (4) Allied is not entitled to reimbursement of the defense costs it previously paid to St. Luke's. The Court will grant that relief.

Although St. Luke's entitled its motion as a "partial" motion, its motion actually seeks to resolve all remaining issues. *See St. Luke's Brief (Dkt. No. 19-5)* at n. 3. Similarly, Allied's answer and counterclaim relies entirely on the language of Exclusion A evaluated in this decision. Thus, no further issues remain to be resolved, and this decision ends the case. Accordingly, the Court will enter a separate Judgment as required by Rule 58(a).

**Memorandum Decision – page 4**



DATED: September 4, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision – page 5**